# IN THE SUPREME COURT OF TENNESSEE
## SPECIAL WORKERS' COMPENSATION APPEALS PANEL
### AT JACKSON
Assigned on Briefs December 13, 2021

## AMY A. CUMMINGS-BOYD v. LAW OFFICES OF JEFFREY A. GARRETY, P.C.

**Appeal from the Chancery Court for Madison County**
**No. 74223     James F. Butler, Chancellor**

FILED

MAR 0 4 2022

Clerk of the Appellate Courts
Rec'd By

**No. W2021-00720-SC-R3-WC – Mailed February 9, 2022**

This appeal involves an employer's appeal of an order to compel medical treatment. The employer argues the trial court erred by ordering it to provide the employee specific continuing treatment, as well as treatments requested by all of her approved treating physicians in the future, without evidence that the continuing and future treatments are reasonably necessary and causally related to her work injury. The employer's appeal has been referred to this Special Workers' Compensation Appeals Panel pursuant to Tennessee Supreme Court Rule 51. We affirm the trial court's order compelling the requested medical treatment, but modify the order to omit predetermined approval of future medical treatments, and affirm as modified.

### Tenn. Code Ann. § 50-6-225(e) (2014) (applicable to injuries occurring prior to July 1, 2014) Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified

HOLLY KIRBY, J., delivered the opinion of the court, in which DON R. ASH, SR.J., and ROBERT E. LEE DAVIES, SR.J., joined.

W. Troy Hart and Tiffany B. Sherrill, Knoxville, Tennessee, for the Appellant, Law Offices of Jeffrey A. Garrety, P.C.

Jeffrey P. Boyd, Jackson, Tennessee, for the appellee, Amy A. Cummings-Boyd.

## OPINION
### FACTUAL AND PROCEDURAL BACKGROUND

During the relevant period, Appellant Amy A. Cummings-Boyd ("Employee") was employed by Appellee Law Offices of Jeffrey A. Garrety, P.C. ("Employer"). On May 21, 2014, Employee sustained a compensable injury to her low back, hip, neck and bilateral upper arms and hands while working Employer. She filed a workers' compensation claim for the injury.

On April 5, 2016, the trial court entered an order approving the parties' settlement of the workers' compensation claim. Regarding future medical benefits, the order stated:

> [Employer] is willing to provide[,] and [Employee] is willing to accept, the reasonable and necessary future medical treatment, services and supplies arising out of said injury by accident on May 21, 2014, and within the scope of Tenn. Code Ann. § 50-6-204, from authorized physicians, G. Bradford Wright, M.D. and Roy Schmidt, M.D. for pain management; provided, however, [Employee] shall first consult with [Employer] prior to seeking such treatment and shall comply with [Employer's] reasonable referral to authorized medical treatment. In the event Dr. Wright or Dr. Schmidt can no longer treat [Employee], [Employer] reserves the right to offer [Employee] a panel of physicians.

After her May 2014 work injury, Employee began receiving radiofrequency ablation ("RFA") treatments from Dr. Schmidt, to help manage the pain from her injuries. Employer's workers' compensation insurance carrier readily paid for those continuing treatments, as referenced in the settlement order. That changed, however, once AmTrust North America ("AmTrust") became Employer's workers' compensation insurance carrier. AmTrust began consistently denying payment for the RFA treatments.

In July 2019, after AmTrust denied payment for repeat RFA treatment ordered by Dr. Schmidt in May 2019, Employee filed a motion to compel medical treatment. On March 24, 2020, the trial court entered an order granting the motion. The trial court's order found the RFA treatments were "reasonable, necessary and causally connected to the work injury [Employee] sustained at [Employer]." The trial court ordered AmTrust "to approve Dr. Schmidt's proposed medical treatment without delay." In compliance with the order,

2

Employer paid for a lumbar RFA treatment Employee received in May 2020.

In February 2021, Employee filed a second motion to compel medical treatment. It asserted that AmTrust denied a repeat cervical RFA treatment ordered by Dr. Schmidt in October 2020, and that AmTrust denied payment for all of the medications ordered for Employee as well.[1] Employee also filed a separate motion asking the trial court to hold AmTrust in contempt for willfully failing to comply with the March 24, 2020 order. In support of these motions, Employee relied on the records related to the previous motion to compel medical treatment.

The records on which Employee relied included Dr. Schmidt's December 3, 2019 deposition. In the deposition, Dr. Schmidt explained the purpose of RFA:

> So the spine is composed of several structures. The facet joint is a joint that goes between each space, each vertebral body. And during injuries, falls, somebody kicks you in the back, the neck, those joints have a small capsule. Those capsules can be disrupted. And then they start to develop pain and/or arthritic changes.
>
> The options to treat these damaged joints, it's either with steroids into the joint specifically, or what we call [RFA] after doing a diagnostic block that is called medial branch block. The purpose of the [RFA] is to control at least 50 percent of her pain without using steroids or narcotics.

In response to a general catch-all question about whether the continuing RFA treatments, including lumbar and cervical, were "reasonable and necessary and related to [Employee's] May 2014 injury," Dr. Schmidt said they were. Each RFA treatment should last at least six months, he said, and Employee had "always done better than the average." Because Employee had "done very well with these treatments," he did not recommend alternatives. Regarding her future RFA treatments, he stated:

---

[1] Employee also filed a motion to compel medical treatment in September 2017, concerning denial of a cervical RFA treatment, but that motion was never heard. Therefore, the second motion to compel medical treatment heard by the trial court was in fact the third such motion filed by Employee. We consider only the motions adjudicated by the trial court.

3

Well, looking—looking at her past, she is going, I think, somewhere like nine months, sometimes 12 months between, and we're doing by sections. So we don't do the cervical spine or the neck area at the same time as we do the lower back. But each section is lasting somewhere between nine months and 12 months.

In response to the second motion to compel medical treatment, Employer disputed whether the treatment is reasonably necessary and causally related to Employee's May 2014 work injury. In response to the contempt motion, Employer asserted Dr. Schmidt's "new" treatment request for Employee was denied "legitimately and in good faith," pursuant to the utilization review process. In addition, Employer filed a motion in limine to exclude Dr. Schmidt's December 3, 2019 deposition as irrelevant because it concerned "*past* treatment on a *different* location."

The trial court conducted an evidentiary hearing on the motions on March 29, 2021. In the hearing, the trial court received exhibits and heard testimony from Employee regarding Employee's motions. The parties presented argument on Employer's motion in limine, but the trial court did not formally rule on it.

In the hearing, Employee testified that the continuing RFA treatments, both lumbar and cervical, have "worked since [Dr. Schmidt] ordered them in 2014, and they continue to work." At the time of the hearing, she said, the treatments were lasting from six to eight months, but before AmTrust "started denying everything on a regular basis," they had lasted about nine months. AmTrust had also denied payment for Mobic (an anti-inflammatory) and Flexeril, two medications ordered to go with Employee's RFA treatments. When Employee was asked on cross-examination about the utilization review, she indicated no physician in that process had seen or treated her.

In the March 2021 hearing, Employer relied on utilization review decisions denying a left cervical RFA treatment and denying Cyclobenzaprine (a muscle relaxant marketed as Flexeril), both requested in June 2020. In the utilization review appeal with the Tennessee Bureau of Workers' Compensation, the Medical Director upheld those decisions. By letter dated July 24, 2020, the Medical Director stated he agreed with: (1) the denial regarding the left cervical RFA because "[t]he previous right side was not successful

4

according to the records"; and (2) the denial regarding Cyclobenzaprine because "[t]he long-term use of this medication is not supported by [the Tennessee Chronic Pain Guidelines and the Official Disability Guidelines]."

By order filed May 7, 2021, the trial court denied Employee's motion to hold AmTrust in contempt, "subject to additional filings should they fail to comply with further Orders of this Court." By order filed May 20, 2021, the trial court granted Employee's second motion to compel medical treatment and awarded Employee $4,020 in attorney fees and $218.78 in costs. The trial court's findings included the following:

> [Employee] most recently received RFA treatment in May, 2020, to her low back/hips after the Court ordered [Employer's] carrier to pay for the treatment which had been ordered by Dr. Schmidt, but denied by [Employer's] carrier.
>
> After the treatment was received by [Employee], she reported a 90% improvement in pain.
>
> [Employee] saw Dr. Schmidt in October, 2020 when Dr. Schmidt ordered RFA treatment for her cervical spine, noting that [Employee] had done well with this treatment. He also ordered medications.
>
> [Employee] is entitled to life time medical treatment for her injuries arising out of her work accident. Dr. Schmidt is one of her treating physicians. He sees her regularly as needed. He has stated that the treatments are reasonable and necessary and related to her work injury of May, 2014.
>
> [Employee] testified, unrebutted, that the treatments ordered by Dr. Schmidt for RFA work for her for approximately six to eight months, both lumbar and cervical treatments. She also testified, unrebutted, that the medications provided by Dr. Schmidt have not changed.
>
> The doctors and persons reviewing her medical records and making decisions for the Utilization Review Board and the Medical Director have not seen or spoken with [Employee]. Dr. Schmidt sees [Employee] personally and both he and [Employee] state that the RFA treatment works for [Employee].

The May 20, 2021 order directed AmTrust to "provide [Employee] continuing medical treatments going forward as requested by Dr. Schmidt and all of her approved treating physicians in the future." It further ordered AmTrust "to pay for the prescribed medications relating to [Employee's] injuries and prescribed by her approved treating physicians."

Employer now appeals.


## STANDARD OF REVIEW

In a worker's compensation appeal, we are required by law to review the trial court's factual findings "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-225(e)(2) (2014) (applicable to injuries occurring prior to July 1, 2014). When the trial judge has the opportunity to hear in-court testimony and observe a witness's demeanor, we give considerable deference to the trial court's factual findings. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, when the record contains expert medical testimony presented by deposition, as is the case here, we may draw our own conclusions with respect to the weight and credibility of the evidence. *Foreman v. Automatic Sys., Inc.*, 272 S.W.3d 560, 571 (Tenn. 2008). We review the trial court's conclusions of law with no presumption of correctness. *Seiber v. Reeves Logging*, 284 S.W.3d 294, 298 (Tenn. 2009).


## ANALYSIS

As a threshold matter, Employer questions whether Employee can rely on Dr. Schmidt's December 3, 2019 deposition because the trial court never ruled on its admissibility. Although the trial court did not formally rule on Employer's motion in limine to exclude the deposition, the trial court addressed it generally and then allowed references to the deposition during the hearing. The trial court's findings of fact include statements made by Dr. Schmidt during the deposition. From this we can conclude that the trial court implicitly denied Employer's motion in limine.

Employer's primary argument is that the trial court erred in its May 20, 2021 order by directing AmTrust to provide Employee the continuing RFA treatments, as requested

6

by Dr. Schmidt, and the medications prescribed by her approved treating physicians. It argues further that the trial court erred in ordering AmTrust to provide all continuing medical treatments "as requested by Dr. Schmidt and all of her approved treating physicians in the future." We consider these in turn.

Tennessee's workers' compensation statutes require employers to "furnish free of charge to the employee such medical care and treatment made reasonably necessary" by a work injury. Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014) (applicable to injuries occurring prior to July 1, 2014). Courts must presume treatments furnished by a designated physician are necessary and the charges reasonable. *Russell v. Genesco, Inc.*, 651 S.W.2d 206, 211 (Tenn. 1983). However, employers may use the utilization review process to evaluate whether a physician's chosen course of treatment is necessary, appropriate, and efficient. *See* Tenn. Code Ann. §§ 50-6-102(20) (defining utilization review); 50-6-124 (establishing utilization review process); *Kilgore v. NHC Healthcare*, 134 S.W.3d 153, 157 (Tenn. 2004) (stating "utilization review provides a mechanism for employers to review and evaluate the costs, reasonableness, and necessity of medical services provided to employees in workers' compensation cases"). When trial courts hear motions to compel medical treatment arising out of a denial of care by utilization review, they must consider the evidence and make a de novo decision about whether the proposed treatment is reasonably necessary. *Shelton v. Joseph Constr. Co.*, No. W2014-01743-SC-R3-WC, 2015 WL 3509283, at *6 (Tenn. Workers' Comp. Panel June 3, 2015).

In this appeal, Employer asserts the utilization review decisions sufficiently rebutted the statutory presumption that the RFA treatments and medications ordered for Employee are reasonably necessary.[2] In support, Employer relies on *Walker v. G.UB.MK Constructors*, No. E2015-00346-SC-R3-WC, 2016 WL 2343177 (Tenn. Workers' Comp. Panel May 2, 2016). In *Walker*, the trial court denied the employee's motion to compel treatment. The trial court ruled that the affidavit by the non-treating physician in the utilization review appeal was sufficient to rebut the presumption that the treatment ordered

---

[2] Employer also argues the presumption should not apply because Dr. Schmidt did not provide testimony specifically on the disputed treatment. This argument is meritless. Dr. Schmidt's deposition testimony addressed the continuing RFA treatments, both lumbar and cervical. In any event, Dr. Schmidt ordered the treatment at issue, and he is Employee's authorized treating physician, so by statute the treatment is presumed reasonably necessary. As to the medications, contrary to Employer's assertion, Employee does not bear the initial burden of introducing evidence of the medical necessity of medications prescribed by her approved treating physicians.

by the treating physician was reasonable and necessary. *Id.*, 2016 WL 2343177, at \*6. In affirming the trial court's judgment, the Panel in *Walker* noted the conclusions made during the utilization review process were supported by detailed findings. *Id.*

This case is in a different procedural posture than *Walker*. Here, unlike *Walker*, the trial court *granted* Employee's motion to compel medical treatment. It accredited Employee's testimony about the ordered RFA treatments, both lumbar and cervical, and about the medications. Based on this testimony, the evidence does not preponderate against the trial court's findings.

As noted above, we can reach our own conclusions about the documentary evidence. We consider first the evidence on the utilization review cited by Employer.

In agreeing with the utilization review decision to deny the left cervical RFA, the Medical Director said that, according to the records, the previous right side RFA treatment was not successful. Regarding Cyclobenzaprine, the Medical Director observed that the guidelines do not support long-term use of this medication. Importantly, however, the utilization review decision for Cyclobenzaprine notes that the Medical Director was not furnished with Employee's complete medical record.

At the trial court hearing on Employee's motion to compel medical treatment, Employer submitted no evidence regarding utilization review of any prescribed medications other than Cyclobenzaprine. As the trial court noted, the physicians who reviewed the records and made the utilization review decisions had neither seen nor spoken with Employee.

In contrast with *Walker*, the opinion of the Medical Director in this case was not submitted by affidavit, nor was it supported by detailed findings. Moreover, Employee's authorized treating physician, Dr. Schmidt, testified that Employee has always done better than average; the RFA treatments lasted more than six months and controlled pain more than fifty percent.

The utilization review cited by Employer addressed a request made in June 2020 for a left cervical RFA treatment. The basis for the Medical Director's assertion that the previous right side RFA was unsuccessful appears to be based on the short period of time since Employee's May 2020 RFA treatment. However, by October 2020, when Dr.

8

Schmidt recommended the cervical RFA treatment at issue, more than six months had passed since the May 2020 treatment, and that treatment was for Employee's low back/hips. Based on these considerations, we conclude that Employer did not rebut the statutory presumption that the RFA treatment and medications ordered by Employee's authorized treating physician are reasonably necessary.

Next, Employer contends Employee failed to provide evidence of the causal link between the requested medical treatment and her work injury. Employer relies on *Young v. Sugar Hollow Properties, LLC*, No. E2017-00981-SC-R3-WC, 2018 WL 2357772 (Tenn. Workers' Comp. Panel May 24, 2018). In *Young*, the Panel held: "[I]n a hearing to compel medical benefits, the employee cannot rest on the allegations of her motion. She must offer evidence to support her claim that the requested medical treatment was causally related to her compensable injury." *Id.*, 2018 WL 2357772, at *4.

This argument is without merit. In this case, Employee has been receiving the RFA treatments and medications since shortly after the injury occurred, under the supervision of Employee's authorized treating physicians. Under similar circumstances, the Panel in *Kennedy v. Lakeway Auto Sales, Inc.,* No. E2010-02422-WC-R3-WC, 2011 WL 10857724, at *4 (Tenn. Workers' Comp. Panel Aug. 30, 2011), distinguished cases where the employee was required to present expert testimony to prove the future medical treatment was causally related to the work injury. In any event, Dr. Schmidt indicated in his deposition that the continuing RFA treatments, both lumbar and cervical, are related to Employee's May 2014 work injury. This evidence established the causal connection.

Finally, Employer argues that the trial court erred in ordering it to provide Employee medical benefits as requested by "all of her approved treating physicians in the future" without consideration to whether the benefits are reasonably necessary and causally related to her work injury. We agree. By law, Employee is entitled to reasonably necessary and causally related future medical benefits, as recognized in the trial court's April 5, 2016 order approving settlement of the workers' compensation claim. However, trial courts cannot predetermine that future treatments satisfy these foundational requirements.

*Carter v. Shoney's Inc.*, 845 S.W.2d 740 (Tenn. 1992), is instructive. In *Carter*, the employer appealed the trial court's grant of a motion to compel medical treatment. The employer questioned the trial court's statutory authority to order, in effect, chiropractic care for the employee for the remainder of her life. *Id.* at 741. Giving proper effect to the

workers' compensation laws regarding future medical benefits, the Court modified the judgment "to provide that the employer must provide future, free reasonably necessary medical, including chiropractic, treatment for the adjudicated injury to the employee." *Id.* at 744.

We note as well that the trial court's order in this case could be seen as limiting to Employee, to the extent it refers to "continuing medical treatments" as ongoing RFA treatment and medications. Trial courts do not have authority to prescribe the exact future treatments employers must provide. *See Kennedy*, 2011 WL 10857724, at *4. The Panel in *Kennedy* observed that the judgment granting the motion to compel medical treatment in that case, as written, could have been seen as limiting the employee's future treatment to pain management, even if complications arose that required some other course of treatment. For this reason, the Panel modified the judgment "to require the employer to provide all reasonably necessary medical treatment, which may include pain management." *Id.*, 2011 WL 10857724, at *5.

Consistent with *Carter* and *Kennedy*, we modify the trial court's judgment in this case to require Employer to provide Employee future, free reasonably necessary medical treatment, which may include the continuing treatment requested by Dr. Schmidt, for her May 2014 work injury.[3] In all other respects, we affirm the trial court's judgment granting the motion to compel medical treatment.

---

[3] We recognize that the trial court's order may have been an effort to prevent Employer from misusing the workers' compensation laws in the future to unfairly make Employee litigate each and every requested medical treatment. If Employer engages in such conduct, the trial court may utilize, pursuant to court rules, other means to compel good faith compliance with the settlement, such as attorney fees and sanctions.

10

## CONCLUSION

The judgment of the trial court is modified, as set forth above, and otherwise affirmed. Costs on appeal are taxed against Law Offices of Jeffrey A. Garrety, P.C., and its surety, for which execution may issue if necessary.

_____
HOLLY KIRBY, JUSTICE

11

# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON

## AMY CUMMINGS-BOYD v. LAW OFFICES OF JEFFERY A. GARRETY PC

**Chancery Court for Madison County**
**No. 74233**

**No. W2021-00720-SC-R3-WC**

FILED

MAR 0 4 2022

Clerk of the Appellate Courts
Rec'd By

## JUDGMENT ORDER

This case is before the Court upon the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference.

Whereupon, it appears to the Court that the Memorandum Opinion of the Panel should be accepted and approved; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court.

Costs on appeal are taxed against Law Offices of Jeffrey A. Garrety, P.C., and its surety, for which execution may issue if necessary.

It is so ORDERED.

PER CURIAM